UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

RODNEY HOLLOWELL,

       Plaintiff,

  v.

KAISER FOUNDATION HEALTH PLAN
OF THE NORTHWEST, doing business as
KAISER PERMANTE,

       Defendant.

_____

Case No.: 3:12-CV-2128-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

   Plaintiff Rodney Hollowell ("Hollowell"), filed this action against his employer, Kaiser

Foundation Health Plan of the Northwest ("Kaiser"), alleging various claims for discrimination

based on Hollowell's sex and race.  Currently before the court are Kaiser's motion for summary

judgment on Hollowell's "pay-related claims" under the Equal Pay Act, 29 U.S.C. § 206 (the "Act")

and the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"), and Hollowell's cross-motion for summary judgment on his claim under the Act.

The court finds that Hollowell has failed to establish he was similarly situated to his identified comparators, that females were paid more than their male counterparts, or that he was denied a reassignment because of his race. Accordingly, the court recommends Kaiser's motion for partial summary judgment on Hollowell's pay-related claims be granted and Hollowell's motion for partial summary judgment on his claim under the Act be denied. Kaiser's objections to Hollowell's evidentiary submissions are overruled with regard to Sampson's declaration and sustained in all other respects.

*Preliminary Procedural Matter*

The evidence presented in support of or in opposition to a motion for summary judgment must be based on personal knowledge, properly authenticated and admissible under the Federal Rules of Evidence. FED. R. CIV. P. 56(c) (2103). The court must determine what evidence is admissible, relevant, and substantive. FED. R. EVID. 104 (2013). A party filing a motion for summary judgment will generally support that motion with affidavits or declarations. Rule 56 requires that the affidavits or declarations " be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).

In its opposition to Hollowell's motion for partial summary judgment, and in its reply in support of its own motion for partial summary judgment, Kaiser objects to most of Hollowell's evidentiary offerings. In response, Hollowell asserts he is obligated only to offer evidence that would be admissible at trial, the evidence offered is supported by a proper foundation and is relevant,

Kaiser's objections are unclear and nonspecific, and the objected to evidence is not hearsay or is subject to a hearsay exception.

I.  Admissibility at Trial

Hollowell asserts that because the evidence offered by him could be presented in an admissible form at trial, it should be considered by the court at this summary judgment stage.  Rule 56 specifically states that an affidavit or declaration used in support of, or opposition to, a motion for summary judgment must "set out facts that would be admissible in evidence."  FED. R. CIV. P. 56(c)(4).  The Ninth Circuit has construed this standard to allow the consideration of evidence on summary judgment if the evidence could be produced in an admissible form at trial.  In *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003), the court explained that "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents."  It then overruled defendants' hearsay objection to the admission of plaintiff's diary offered as an exhibit to her declaration, noting the contents of the diary were within the personal knowledge of the plaintiff and could be admitted at trial through plaintiff's testimony, to refresh her recollection, or as a recorded collection. *Id*. at 1037.  Ultimately, if the contents of the evidence offered through a declaration are within the declarant's personal knowledge and could be presented in an admissible form at trial, the evidence must be considered on summary judgment. *Id*.

Here, Kaiser objects primarily to the content of the evidence offered by Hollowell, not the form of the evidence offered.  The court's determination that a declarant lacks personal knowledge or that evidence offered is irrelevant to the matters before the court is based solely on the content offered, not the form in which it was offered.  With regard to hearsay statements contained in

declarations, affidavits, and exhibits, the court has addressed Kaiser objections to the evidence offered, as well as Hollowell's arguments that the evidence would be admissible at trial if offered in another form where Hollowell has specified the form in which the evidence would be considered admissible. In a few instances, the evidence objected to has been offered in more than one form, such as through more than one declaration or in a declaration and an exhibit. A finding by the court that the evidence is inadmissible in one form is not a finding that the evidence is inadmissible in all forms. Accordingly, the court has considered evidence which it found to be inadmissible as presented in one form when the evidence has also been, or could have been, offered in a form admissible at trial.

## II.  Unclear and Nonspecific Objections

Hollowell argues that because some of Kaiser's evidentiary objections are unclear and nonspecific, they are waived. In support of this argument, Hollowell relies on the court's denial of the plaintiff's motion to waive the defendant's evidentiary objections which were made in a reply brief in *Fraser*. *Id*. at 1036. The court described the objections as "clear, specific, and timely made to the district court" and found that they were properly preserved. *Id*. Here, Kaiser asserted its objections in their opposition and reply briefs. The objections were made timely and with sufficient clarity and specificity for the court to understand the objections made and the evidence objected to. Kasier's objections were properly made and timely filed.

## III.  The Brooks Declarations

Kaiser objects primarily to the declarations of Tessa Brooks[1] offered in support of

---

[1]The declarations of Tessa Brooks provided to the court by Hollowell as "Judge's Copies" are not the documents filed electronically with the court. The court will consider only those documents electronically filed and, therefore, served on opposing counsel. The court notes that the

Hollowell's motion for partial summary judgment and in opposition to Kaiser's motion for partial summary judgment. Tessa Brooks ("Brooks") is a former employee of Kaiser who is currently employed by the Service Employees International Union Local 49 (the "Union"). (Brooks Decl. ¶ 1.) Brooks worked as a Union steward or contract specialist from March 2011 to January 2013. (Brooks Decl. ¶ 2.) In this capacity, Brooks represented Hollowell on his claims through the Union grievance procedure. (Brooks Decl. ¶ 2.) Brooks states that, based on her representation of Hollowell and her own experiences at Kaiser, she has "first hand knowledge" of the problems Hollowell faced at Kaiser and believes that Hollowell and other minorities were treated unfairly by Kaiser. (Brooks Decl. ¶¶ 4-5.)

A.  Relevance

Kaiser objects to Brooks's description of discriminatory activities by Kaiser based on an employee's race. Brooks states that minority employees worked less desirable shifts, were paid less, were unfairly disciplined or terminated, and were subjected to racial slurs and hostile environments. Kaiser argues that this evidence is not relevant to the claims at issue – that Kaiser discriminated against Hollowell by paying him less than other employees based on his sex and race.

Evidence is considered "relevant" if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401 (2013).[2] Hollowell's claim under the Act requires a finding that he

_____

declarations seem identical, with the exception of the caption and the signature page. However, the declaration filed in support of Hollowell's motion for partial summary judgment does not include the exhibits referenced therein.

    [2]The court acknowledges that in considering evidence offered in support of, or in opposition to, a summary judgment motion, it must necessarily apply the underlying summary judgment standard when it encounters evidence that is irrelevant, speculative, ambiguous, argumentative, or

—

was paid less than female employees. Kaiser's alleged mistreatment of Hollowell, or other employees, based on race has no bearing on Kaiser's claim for equal pay under the Act. Accordingly, the statements made by Brooks with regard to race discrimination is not relevant to Hollowell's claim for equal pay based on his sex. The same can not be said, however, for Hollowell's claims under Section 1981, which allege that Hollowell was paid less than other similarly situated employees based on his race. Evidence that Kaiser regularly discriminated against minority employees would provide support to Hollowell's claim that he was paid less than his Caucasian counterparts. Therefore, such evidence is relevant to Hollowell's Section 1981 claims.

### B. Hearsay

Hearsay is defined as an out-of-court statement offered in evidence to prove the truth of the matter asserted. FED. R. EVID. 801. Hearsay is admissible only if it qualifies as an exception to the general hearsay rule. The Ninth Circuit has generally applied the limitations found in the hearsay rule, set forth in Rule 802 of the Federal Rules of Evidence, to evidence offered by the parties at the summary judgment stage. *Orr v. Bank of America*, 285 F.3d 764, 778 (9th Cir. 2002); *Beyenne v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988).

### 1. Interview Notes

Attached as exhibits to Brooks's declaration are what appear to be three pages of notes from

---

constitutes a legal conclusion exclusively within the purview of the court's consideration. *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E. D. Cal. 2006)(noting that various evidentiary objections, such as relevance, were redundant at the summary judgment stage where the court can award summary judgment only in the absence of a genuine issue of material fact based on evidence the contents of which must be admissible). Generally, this court would not specifically address relevance objections independently of its consideration of the merits of the underlying summary judgment motions. However, as Kaiser's relevance objections are limited, the court has done so in this instance.

Brooks's interviews with Kaiser employees identified as Tim Kylo ("Kylo") and Laurel Cutler ("Cutler") (the "Notes").[3] While Hollowell and Brooks refers to the Notes as exhibit "D", the exhibits attached to the Brooks declaration are not designated as exhibit "A", "B", or "C", which makes it difficult for the court to determine which attached documents are included within exhibit "D".  Assuming the court has properly identified the documents characterized as exhibit "D", the Notes reflect answers to Brooks's questions or independent statements made by the employees during the interviews.  Kaiser asserts that these answers and statements are hearsay.

The Notes contain out-of-court statements made by Kaiser employees with regard to the proper characterization and pay scale for Hollowell's job.  Kylo stated he performed a job for which he was not paid special floor care wages but that "Laurel" was paid the special floor care wage when she performed the same job.  (Brooks Decl. Ex. D at 1.)  Cutler indicated she was paid as a floor care technician while she was working the kitchen job, the kitchen job was restructured after she left, and if Hollowell runs a machine, he is a floor tech.  (Brooks Decl. Ex. D at 2-3.)

Hollowell argues the Notes are not hearsay to the extent they are offered to prove an investigation into Hollowell's unequal pay claim occurred or that Brooks has first hand knowledge of the relevant issues involved in such claim.  The court agrees that in this context, the Notes are not hearsay.  However, there is no dispute that Brooks participated in the claims process and was aware of the claims made by Hollowell.  Brooks's declaration, and exhibits attached thereto, make these facts clear.  Accordingly, the Notes are unnecessary and redundant if offered solely in this context.

---

[3]A fourth page of notes appears to be from an interview of an individual identified only as "Yvonne" who was asked if she was "getting paid for floor care while working in the kitchen." (Brooks Decl. Ex. D at 4.)  The notes do not indicate the answer to that question.  The fourth page of notes has no bearing on the issue before the court and is stricken.

Alternatively, the Notes are being offered by Hollowell to prove the truth of the matter asserted therein – that a woman was paid special floor care wages when men who performed the same work were not. As such, the Notes are hearsay. Hollowell argues the Notes are still admissible under FED. R. EVID. 801(d)(1) and (2) as statements made by Kaiser employees during the course and scope of their employment, under FED. R. EVID. 803(5) and (6) as notes taken in the ordinary course by Union stewards investigating employee complaints, and under FED. R. EVID. 804(b)(3) if either Cutler or Kylo is unable to testify at trial.

Rule 801(d)(1) allows a party to offer hearsay statements taken under oath in a prior formal proceeding if the statement is inconsistent with a witness's testimony at trial and the witness is subject to cross-examination concerning the prior statement. The Notes were not taken under oath. Accordingly, this exception is not applicable. Subsection (B) of the same rule provides that prior consistent statements are not hearsay when offered to rebut a charge that a declarant's trial testimony was recently fabricated or based on improper influence or motive. The declarants, if called at trial, are expected to testify consistent with their statements recorded in the Notes due, in large part, to the fact that most, if not all, of the statements are consistent with other evidence in the record. Accordingly, it is unlikely Kaiser will argue that a declarant has recently fabricated their testimony, negating the need for Hollowell to offer the Notes to rebut the allegations of fabrication.

Rule 801(d)(2) exempts from the hearsay rule statements that qualify as admissions by an opposing party. To qualify as an admission, the statement must be contrary to the position taken by the opposing party at trial. Here, Kaiser does not dispute that Cutler, a trained floor care technician, was paid floor care technician wages while Hollowell was not, or that the kitchen job was restructured before it was assigned to Hollowell. The Notes, therefore, do not qualify under this

exemption with regard to these statements.  Cutler also indicates that "if Rodney runs a machine, he's a floor tech."  (Brooks Decl. Ex. D at 3.)  This statement is clearly contrary to Kaiser's position and may be considered an admission under Rule 801(d)(2).  The question then becomes whether Cutler was speaking as an agent of Kaiser at the time of the admission.

A statement of an employee qualifies as an admission by an employer only if "made by the . . . employee on a matter within the scope of that relationship and while it existed."  FED. R. EVID. 801(d)(2)(D).  While the Notes indicate Cutler worked in the kitchen job in 2008, and was trained as a floor care technician in 2009, there is no evidence that Cutler worked for Kaiser on October 18, 2011, or February 8, 2012, the apparent dates of the interviews reflected in the Notes.[4]  Hollowell has failed to establish the Notes represent statements made by Cutler while she was an employee of Kaiser and, therefore, has failed to meet his burden to prove the Notes qualify for this exemption to the hearsay rule.

Hollowell argues that the Notes qualify as past recollection recorded, an exception to the hearsay rule found in FED. R. EVID. 803(5).  First, this exception is available only when a witness is unable to remember the events represented in the Notes.  Hollowell has not indicated that either Kylo or Cutler has forgotten the information they provided Brooks in the interviews.  Additionally, the written record must be made by the witness or, if created by a third party, the witness must adopt the record as their own at a time when the events are fresh in the witness's memory.  *United States v. Collicott*, 92 F.3d 973, 984 (9th Cir. 1996).  Hollowell presents the Notes as a recording created by Brooks.  There is no evidence that Kylo or Cutler adopted, or even reviewed, the Notes.

---

[4]  Similarly, the Notes of Kylo's interview provide no indication that he worked at Kaiser at the time of his interview.

Hollowell identifies the Notes as business records under FED. R. EVID. 803(6), explaining that Union stewards normally keep records of their investigatory meetings. Even assuming Brooks regularly prepared interview notes in her capacity as a union steward, the Notes do not qualify for the business records exception because Hollowell has failed to establish that either Kylo or Cutler were acting in the course of business at the time of the interviews. "The business records exception to the hearsay rule applies only if the person who makes the statement 'is himself acting in the regular course of business.' " *Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272, 279 (5th Cir. 1991)(quoting *Florida Canal Indus., Inc. v. Rambo*, 537 F.2d 200, 202 (5th Cir. 1976)). As noted above, there is no evidence that Kylo or Cutler were employed by Kaiser at the time the interviews occurred.

Finally, Hollowell argues the Notes may be admissible if Kylo or Cutler are unavailable to testify at trial. Rule 804 provides an exception to the hearsay rule if the declarant is unavailable and the hearsay statements were: 1) given at a prior trial, hearing or deposition; 2) under belief of impending death; 3) against the declarant's proprietary or pecuniary interest; 4) concerning personal or family history; or 5) offered against the party that wrongfully caused the declarant's unavailability. The Notes do not qualify for any of the five requirements listed in Rule 804. Therefore, even if Kylo or Cutler were unavailable for trial, the Notes would not be admissible under this exception.

The court finds that the interview notes are hearsay and do not qualify for any exemption or exception. Consequently, Kaiser's motion to strike this evidence is sustained and the court will not consider the Notes.

### 2. Brooks's Statements

Kaiser also objects to statements made by Brooks in which she repeats or paraphrases

comments made by Kaiser employees.  In paragraph 7 or her declaration, Brooks represents that "[t]he female co-worker who held the Kitchen position before Mr. Hollowell indicated that if you ran the floor scrubbers you were considered a 'Floor Care Tech'," citing her interview notes as support for this statement.  As noted above, this statement is hearsay, does not qualify for an asserted exception, and is inadmissible.

Brooks represents that the same female co-worker made derogatory and racially offensive comments about President Obama in the employee break room, offending Hollowell and several other employees.  (Brooks Decl. ¶ 9.)  Hollowell is not offering the derogatory comment about the President to prove the truth of the matter asserted but, rather, to prove the existence of a hostile environment.  Therefore, the derogatory comment itself is not hearsay and is admissible.  However, there is no evidence that Brooks was present when the comment was made leading to the conclusion that she is repeating a description of the event by someone who was present thus creating a second layer of hearsay.  Rule 805 of the Federal Rules of Evidence provides that:

> Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.

Brooks's restatement of what a third party heard the female co-worker say is an attempt to enter into evidence an out of court statement by third party to prove that the female co-worker made the offensive statement.  The third-party statement is being offered to prove that the truth of the matter asserted therein and is, therefore, hearsay.

The last statement in paragraph 9 characterizes Kaiser's response to the report of this incident as "apathetic" based on one supervisor's comment that "no one should have been offended since no

blacks were around."[5]  (Brooks Decl. ¶ 9.)  Hollowell concedes this statement may be hearsay but argues it is not being offered for the truth of the matter contained therein but to establish the mindset of the unidentified supervisor.  Hollowell also argues the statement is admissible under FED. R. EVID. 801(d)(2)(D) as a statement made by agent of Kaisier, or FED. R. EVID. 804(b)(3) if the declarant, identified in the briefing as "Ms. Sullivan", is unavailable for trial.  However, Hollowell ignores the absence of evidence that Brooks was present when the statement was made and, therefore, had to have heard of the statement from someone else.  The reporting of the statement is a second layer of hearsay to which these exclusions do not apply.

The Brooks declaration contains many statements specifically attributed to Hollowell.  For example, Brooks reports that "Mr. Hollowell reported to me once that Ms. Sullivan said that there would not be any blacks working on day shift."  (Brooks Decl. ¶ 21.)  Hollowell argues that the initial statement by Sullivan is being offered not for the truth of the matter asserted but rather to establish Sullivan's state of mind – arguably, that Sullivan is prejudiced against blacks.  Even assuming this argument has merit, the statement from Hollowell to Brooks that Sullivan made this statement is also hearsay and, because Brooks did not indicate that Sullivan made the underlying statement directly to Hollowell, there is likely a third hearsay statement from the individual that heard Sullivan's statement to Hollowell.  The latter two statements are being offered for the truth of the matter asserted therein – that Sullivan actually said there would not be any blacks working on day shift – and are both hearsay.

Hollowell argues that Hollowell's statement, the second or third layer of hearsay, is

_____

[5]The middle statement in paragraph 9 indicates that despite knowing several employees were offended by this statement, Kaiser did not address the issue in a timely manner.  While the statement is not hearsay, it is vague as well as a legal conclusion and, therefore, not admissible.

admissible under FED. R. EVID. 801(d)(1)(B) as Hollowell will be present at trial to testify about the statement or as an excited utterance excepted from the hearsay rule under FED. R. EVID. 803(2). Under Rule 801(d)(1)(B), prior consistent statements are not hearsay when offered to rebut a charge that a declarant's trial testimony was recently fabricated or based on improper influence or motive. The prior consistent statement must have predated the alleged improper influence or motivation resulting in the fabrication. *Tome v. United States*, 513 U.S. 150, 157 (1995). Brooks does not indicate when Hollowell reported Sullivan's statement to her. The only logical conclusion from viewing Brooks's declaration in its entirety is that the reporting occurred after Hollowell initiated his grievance with the union and Brooks was assigned to represent him with regard to this grievance. In this context, Hollowell was motivated to fabricate the statement to support his claim against Kaiser. Consequently, the statement does not qualify for this exception to the hearsay rule.

Rule 803(2) excludes from the hearsay rule statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." As noted above, the Brooks declaration does not establish when, or under what circumstances, Hollowell told Brooks about Sullivan's statement. Accordingly, there is no evidence that Hollowell reported hearing the statement either while or immediately after he heard Sullivan's statement. Hollowed has failed to establish that his report of the statement qualifies for the excited utterance exclusion.

Brooks represents that Hollowell reported to her that "Swastikas and lighting bolts have appeared on the walls in the employee locker room." (Brooks Decl. ¶ 26.) Again, Hollowell is arguably offering this evidence to prove the existence of a hostile workplace which would require that the statement be true, implicating the prohibition on hearsay. Brooks also impliedly attributes statements to others, presumably Hollowell, by stating that she has heard about Kaiser supervisors

disciplining Hollowell based on frivolous and unsubstantiated allegations of misconduct or on conduct for which Caucasian workers were not disciplined. (Brooks Decl. ¶¶ 17, 18.) Again, these are out-of-court statements being offered for the truth of the matters asserted are hearsay and inadmissible.

### C. Foundation

Kaiser objects to statements made by Brooks based on the lack of personal knowledge and, therefore, the absence of a proper foundation. The Ninth Circuit requires that affidavits offered in support of summary judgment be based on personal knowledge. *Bliesner v. The Communication Workers of America*, 464 F.3d 910, 915 (9th Cir. 2006). Federal Rule of Evidence 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The evidence establishing personal knowledge of the matter may consist of the witnesses own testimony. *Id.*

Brooks make numerous statements based on "personal knowledge" but fails to reference evidence supporting a finding that she has the requisite personal knowledge. She represents that she has personal knowledge that Hollowell received $1.50 an hour less than females or Caucasians performing substantially similar work; that Kaiser supervisors were hostile toward Hollowell, engaged in deceptive tactics to undermine Hollowell, and used racial slurs against Hollowell; and that other minority employees were being unfairly disciplined and terminated.

Brooks states that she was previously employed by Kaiser, most recently as a pre-registration specialist, and that she has worked for the Union since March 2011. (Brooks Decl. ¶ 21.) She does not present evidence that she worked at Kaiser during the relevant period (from March 2010 through the present), held a position with Kaiser that would provide her with personal knowledge of the facts

alleged, or was present when the conduct described occurred. It appears from the record that Brooks's information was obtained from conversations she had with Hollowell or other Kaiser employees, not from her own personal knowledge of the matters described. Hollowell has failed to establish the proper foundation for the statements found in paragraphs 6, 14, 16, 19, 20, 22, 24, and 25 of the Brooks declaration.

IV. Hollowell Declaration

Kaiser also objects to the adequacy of the foundation for statements made by Hollowell in his declarations. Hollowell represents that "[s]ince I have been doing this job I have been making $1.50 less per an hour than my female coworkers who do the same or substantially the [same] job." (Hollowell Decl. ¶ 6.) Hollowell has personal knowledge of the amount he is paid per hour but has not presented evidence to support a conclusion that he also has personal knowledge of the amount his female co-workers are paid. To the extent he has obtained this information from his female co-workers, the statements made by the co-workers would qualify as hearsay and would be inadmissible. Kaiser also objects to Hollowell's statement that he does the same or substantially the same work as his female co-workers. Hollowell does not explain how he obtained this information. Hollowell works the swing shift; he has no personal knowledge of the duties performed by Kaiser employees who work during the day shift. Similarly, as Hollowell is the sole employee assigned to the kitchen and others perform this assignment only on weekends or when he is unable to work, Hollowell is not present when others perform his kitchen duties. If Hollowell is relying on information provided to him by others, those statements are offered for the truth of the matter asserted and are hearsay. Kaiser's objections to paragraphs four through six of the Hollowell declarations are sustained.

V.  Sampson Deposition

Kaiser argues that any attempt by Yvonne Sampson ("Sampson") to compare her work with that performed by Hollowell lacks a proper foundation as Samspon admits that she has never seen Hollowell working and does not know what kind of work he performs.  In her deposition, Sampson states she uses the same walk-behind floor scrubber Hollowell claims to use but then testifies that she does not spy on Hollowell, does not know what he does in the kitchen, has heard that he uses the walk-behind floor scrubber to clean the floors, but has never personally seen him cleaning the floors in any manner.  (Sampson Dep. 5:10-24, 8:15-9:6.)  Sampson does not attempt to compare her work to Hollowell's – she clearly denies any knowledge of what Hollowell does.  Accordingly, Kaiser's objection to such testimony is without merit and is overruled.

*Background*

Hollowell is an African-American male who has was hired by Kaiser as a housekeeping aide in June 1999. (Hollowell Decl. ¶¶ 1, 2; Hollowell Dep. 186:6-13.) Since December 2009, Hollowell has worked in the kitchen as a housekeeping aide.  (Hollowell Decl. ¶ 3.)  In July 2010, La Donna Sullivan, Manager of Kaiser's Environmental Services Department ("Sullivan"), authorized Hollowell's request to be regularly assigned to the kitchen housekeeping aide position.  (Sullivan Decl. ¶ 3.)  He is the only Kaiser employee with that assignment.  (Sullivan Decl. ¶ 4.)

Hollowell's major responsibility is to clean the floor in the cafeteria and kitchen area. (Hollowell Decl. ¶ 3.) The cleaning occurs during the swing shift.  (Hollowell Dep. 66:4-6; Sullivan Decl. ¶ 4.)  Hollowell works five nights a week.  (Hollowell Dep. 66:7-9.)  For at least a year, Mike Daigle ("Daigle"), a Caucasian male, performed Hollowell's job duties on the remaining two nights. (Hollowell Dep. 66:18-25.)  Both Hollowell and Daigle were classified and paid as housekeeping

aides.  (Hollowell Dep. 66:24-25; Ferguson Decl. ¶ 11.)  If Hollowell is unable to work on one of his five assigned days, floor care technicians will take over his duties and clean the kitchen. (Hollowell Dep. 10-17.)

Since 2008, fifteen Kaiser employees have been assigned to clean the kitchen.  (Sullivan Decl. ¶ 10.)  Of the fifteen, seven are classified as housekeeping aides and eight are classified as floor care technicians.  (Sullivan Decl. ¶ 10.)  Of the seven housekeeping aides, four are Caucasian, two are African-American, and one is Hispanic/Latino.  (Ferguson Decl. ¶ 12.)  Five housekeeping aides are men while two are women.  (Ferguson Decl. ¶ 12.)  Six of the floor care technicians who have been assigned intermittently to clean the kitchen are Caucasian, one is Hispanic/Latino and one is African-American.  (Sullivan Decl. ¶ 11.)  Six of the floor care technicians are men, two are women.  (Sullivan Decl. ¶ 11.)

Hollowell spends five to six hours a night cleaning the floors.  (Hollowell Dep. 81:14-20.) Hollowell has the option of sweeping and mopping the floor but prefers to use a walk-behind floor scrubber.  (Hollowell Dep. 81:21-82:9.)  Hollowell does not wax, buff, or seal the kitchen or cafeteria floors, and has never been asked to do so.  (Hollowell Dep. 610:9-20.)

In September 2011, Hollowell filed a grievance with the Union asserting that because he was performing floor care duties, he should be classified as a floor care technician with the commensurate increase in salary.  (Hollowell Dep. 70:18-24.)  Holloway based his grievance, at least in part, on the fact that Cutler, a Caucasian woman who performed the kitchen cleaning duties immediately before Hollowell was assigned to that position, was paid as a floor care technician, while Hollowell was classified, and paid, as a housekeeping aide.  (Hollowell Dep. 604:18-605:10;

Brooks Decl. Ex. C at 1-2[6].)  Sullivan explained that while assigned to clean the kitchen, Cutler was classified, and paid, as a floor care technician.  (Sullivan Decl. ¶ 15.)

In early 2010, Kaiser determined that the kitchen cleaning assignment did not require the daily services of a floor care technician.  (Sullivan Decl. ¶ 16.)  Accordingly, Kaiser revised the duties of the employee assigned to clean the kitchen daily to include tasks that could be performed by a housekeeping aide and provided for the floors to be waxed and stripped periodically by a floor care technician.  (Sullivan Decl. ¶ 16.)  The tasks performed by Hollowell as a kitchen housekeeping aide do not include services that can be performed only by a floor care technician.  (Sullivan Decl. ¶ 16.)

Hollowell's grievance was denied at steps one, two, and three, and after mediation. (Hollowell Dep. 70:25-71:3.)  The Union decided not to arbitrate Hollowell's grievance explaining in a letter dated January 15, 2013, that the decision was based on "the conclusion that the work you do does not fit the description for a Floor Care Tech.  In particular, you do not do the key tasks that distinguish a Floor Care Tech from a Housekeeping Aide – that is, you do not 'strip, wax, buff and seal hard floor surfaces.' "  (Hollowell Dep. 82:22-83:21; Brooks Decl. Ex. B.[7])

The only evidence of another employee performing duties substantially similar to Hollowell's is the deposition of Sampson, a Caucasian women who is classified as a floor care technician. (Ferguson Decl. ¶ 9.)  Sampson testified that her use of a walk-behind floor scrubber is limited to the cleaning of the back of the labor and delivery hallway and takes only about five percent of her

---

[6]Again, Hollowell does not label the documents attached to the Brooks declaration.  The court assumes that the grievance documents are properly identified as Exhibit C.

[7]As noted previously, the documents attached to the Brooks declaration are not labeled.  The court refers to this letter as Exhibit B as it was the second document attached to the declaration.

time. (Sampson Dep. 5:13-6:1.) Sampson primarily uses a ride-on machine, which is restricted to use by four of the floor care technicians. (Sampson Dep. 7:9-15; 8:7-14.) The job description for a floor care technician indicates that sixty-five per cent of their time is spent waxing, stripping, buffing, and sealing floors. (Sullivan Decl. ¶ 6; Ex. B.)

Hollowell has never applied for a position as a floor care technician. (Hollowell Dep. 146:19-21.) Nor has he, to Kaiser's knowledge, ever had the requisite training or certification to use the ride-on cleaning machines, strip and wax floors, spot clean carpets, or perform other specialized cleaning tasks required of floor care technicians. (Sullivan Decl. ¶¶ 7, 8.)

*Legal Standard*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2012). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c) (2012). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

I.  Preemption

Kaiser asserts that Section 301 of the Labor Management Relations Act ("Section 301") preempts Hollowell's pay-related claims arguing that resolution of these claims requires the court to interpret the terms of the collective-bargaining agreement between Kaiser and the Union. Section 301 provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (2013).  Section 301 preempts state-law contract actions that attempt to enforce

a collective- bargaining agreement.  *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968)(action

filed in state court to enforce a no-strike clause in a collective-bargaining agreement preempted by

§ 301).  This preemption principle also extends beyond state-law contract actions to any state-law

claim that is "inextricably intertwined with consideration of the terms of the labor contract."  *Allis-*

*Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).  "[W]hen resolution of a state-law claim is

substantially dependent upon analysis of the terms of an agreement made between the parties in a

labor contract, that claim must either be treated as a Section 301 claim . . . or dismissed as preempted

by federal labor-contract law."  *Id.* at 220.

      Here, Hollowell has not asserted state law claims.  Rather, he is asserting claims based on

federal statutes that forbid an employer from discriminating against an employee based on the

employee's sex or race, with regard to wage rates.  The United States Supreme Court has recognized

the overreaching policy concerns addressed by Congress in both the Civil Rights Act and the Fair

Labor Standards Act – to protect individual employees from mistreatment in the workplace – and

determined that an employee is not barred from filing discrimination claims under either act  by the

existence of a collective-bargaining agreement addressing the same issues.  *Alexander v. Garner-*

*Denver Co.*, 415 U.S. 36 (1974)(allowing employee to pursue discrimination claim under the Civil

Rights Act despite collective-bargaining agreement); *Barrentine v. Arkansas-Best Freight System,*

*Inc.*, 450 U.S. 728 (1981)(existence of collective-bargaining agreement did not preempt employee's

claim under the Fair Labor Standards Act for minimum wage violations.)  In fact, the Court held that

the employee may pursue a claim under both the collective-bargaining agreement and the statutes.

      In submitting his grievance to arbitration, an employee seeks to vindicate his

> contractual right under a collective-bargaining agreement.  By contrast, in filing a
> lawsuit under Title VII, an employee asserts independent statutory rights accorded
> by Congress.  The distinctly separate nature of these contractual and statutory rights
> is not vitiated merely because both were violated as a result of the same factual
> occurrence.  And certainly no inconsistency results from permitting both rights to be
> enforced in their respectively appropriate forums.

*Alexander*, 415 U.S. at 49-50.

Hollowell is asserting his distinct statutory rights under federal legislation to be free from discrimination based on his sex and race.  Accordingly, neither the existence of a collective-bargaining agreement, nor his attempt to grieve his claims under such agreement, deprives him of this right to pursue his statutory discrimination claims in this court.

## II.  Equal Pay Act

In his Fifth Claim for Relief, Hollowell alleges that he was "paid less wages than female employees for the same or substantially the same work for jobs performed under the same or similar working conditions" in violation of the Act.  (Second Am. Compl. ¶ 43.)  Kaiser argues that Hollowell has failed to establish that his job is substantially similar to that of his identified comparators.  Additionally, Kaiser contends that any wage disparity is based on legitimate factors other than sex.

The Act provides, in relevant part, that:

> No employer having employees subject to any provisions of this section shall
> discriminate, within any establishment in which such employees are employed,
> between employees on the basis of sex by paying wages to employees in such
> establishment at a rate less than the rate at which he pays wages to employees of the
> opposite sex in such establishment for equal work on jobs the performance of which
> requires equal skill, effort, and responsibility, and which are performed under similar
> working conditions. . . .

29 U.S.C. § 206(d)(1) (2013).  To prove a *prima facie* case under the Act, a plaintiff "must show that

the employer pays different wages to employees of the opposite sex for substantially equal work." *E.E.O.C. v. Maricopa Cnty. Comty. College Dist.*, 736 F.2d 510, 513 (9th Cir. 1984).

The plaintiff bears the burden of showing the jobs being compared are "substantially equal." *Stanley v. Univ. of Southern Cal.*, 178 F.3d 1069, 1074 (9th Cir. 1999). The Ninth Circuit applies a two-step analysis for determining substantial equality. First, the court must examine whether the jobs to be compared have a common core of tasks. Next, the court determines whether any additional tasks incumbent on one job but not the other make the two jobs substantially different. *Id*. It is "actual job performance requirements, rather than job classifications or titles, that is determinative." *Maricopa*, 736 F.2d at 513. The jobs need not be identical. *Stanley*, 178 F.3d at 1074. "Minor differences in responsibility . . . do not make the equal pay standard inapplicable." *Maricopa*, 736 F.2d at 514.

Assuming the plaintiff establishes a *prima facie* case, the burden shifts to the defendants to show by a preponderance of the evidence that the pay disparity is justified under one of four statutory exceptions to the Act: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earning by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 USC § 206(d)(1); *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir. 1986). "These exceptions are affirmative defenses which the employer must plead and prove." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). The creation or inclusion of unequal rates of pay in a collective-bargaining agreement does not qualify as an exception or constitute a defense available to an employer for violations of the Act. 29 C.F.R. § 1620.23 (2014).

In his declaration, Hollowell states generally that he performs substantially similar duties, and uses substantially similar equipment, as female coworkers who are paid more than he is. In the

deposition transcripts offered by Kaiser, not Hollowell, he explains that he washes the kitchen floor nightly with a walk-behind scrubber.  He prefers to use the scrubber rather than a mop.  He does not wax, buff, or seal the kitchen floors and has never been asked to do so.

The only evidence of a comparator offered by Hollowell is the deposition of Sampson, a female floor care technician.  Sampson testified that she uses the walk-behind floor scrubber to clean the floors behind the labor and delivery area, which she estimates is about five percent of her work area.  She uses a ride-on machine to clean hallways.  Only four of the floor care technicians use the ride-on machine.

Sampson uses the walk-behind floor scrubber to clean five percent of the area she is assigned.  Hollowell uses the same machine five to six hours a night to clean the kitchen floors.  Sampson uses the ride-on machine to clean hallways, as does three other floor care technicians.  She is also trained to strip, wax, and buff the floors, tasks she performs regularly – approximately sixty-five percent of the time.  Hollowell is not trained to strip, wax, or buff floors, has never engaged in this activity, and has never been asked to do so.  The fact that Hollowell is not performing tasks which make up the majority of a floor technician's job duties necessitates a finding that Hollowell and Sampson's jobs are not substantially equal.

In his deposition, Hollowell refers to Cutler as a possible comparator.  Hollowell has not presented any evidence regarding Cutler's job duties, her use of equipment, or her wage rate.  Sullivan explains in her declaration that Cutler was classified as a floor care technician from February 2009 to April 2010, and was paid the floor care technician wage rate while she was assigned to clean the kitchen.  During that period, the kitchen housekeeping duties included periodically stripping and waxing the floor, tasks that required floor care expertise.  In early 2010,

Kaiser revised the housekeeping tasks to eliminate these floor care technician duties, allowing a housekeeping aide to perform the new kitchen cleaning duties. Like Sampson, Cutler performed floor care technician duties that Hollowell is not trained to, and never does, perform.

Hollowell does not submit evidence with regard to the specific wage rate paid to Sampson. Kaiser submits the Union wage scales, which establish that housekeeping aides make $1.50 less per hour than floor care technicians with comparable seniority. However, in the absence of evidence establishing how much Sampson, or other females, were paid under these wage scales, it is impossible to determine whether the average female floor care technician made more than the average wage paid to their male counterpart. Accordingly, Hollowell has failed to meet his burden of proof that Kaiser pays different wages to employees of the opposite sex for substantially equal work.

Hollowell's claim under the Act fails for the simple fact that Sampson spends significant amounts of time performing work tasks that Hollowell is not trained for and never performs. Additionally, based on the lack of evidence with regard to the wages paid to Sampson and Cutler, Hollowell has failed to establish that female workers are paid more than their male counterparts. Hollowell has not met his burden to present evidence that Kaiser pays different wages to employees of the opposite sex for substantially similar work. Consequently, Hollowell has failed to present a *prima facie* case of unequal pay under the Act. In the absence of a *prima facie* case, the burden does not shift to Kaiser to justify its wage scales or payment practices. Kaiser is entitled to summary judgment on Hollowell's Fifth Claim for Relief under the Act.

/ / / / / /

/ / / / / /

III.  Section 1981

    *A.  Wage Disparity*

Hollowell alleges in his Sixth Claim for relief that he was paid less than similarly-situated

Caucasian employees in violation of Section 1981.  Kaiser moves for summary judgment on this

claim arguing Hollowell is unable to prove he was similarly situated to his identified comparators

and that Kaiser has offered legitimate reasons for the pay disparity.  Hollowell does not respond to

Kaiser's arguments asserted against his Section 1981 claim.

    Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in
> every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the security
> of persons and property as is enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no
> other.

42 U.S.C. § 1981(a) (2013).  Under Section 1981(b), "the term 'make and enforce contracts' includes

the making, performance, modification, and termination of contracts, and the enjoyment of all

benefits, privileges, terms, and conditions of the contractual relationship."

    The standard for establishing a *prima facie* case of employment discrimination under Section

1981 is the same used to establish a *prima facie* case of disparate treatment under Title VII of the

Civil Rights Act of 1964.  *Gay v. Waiters' & Dairy Lunchmen's Union Local No. 30*, 694 F.2d 531,

539 (9th Cir. 1982); *see also Navarette v. Nike, Inc.*, CV-05-1827-AS, 2007 WL 2890976, *5 (D.

Or. September 28, 2007).  Under Title VII, a plaintiff may establish a *prima facie* case of disparate

treatment by either direct or circumstantial evidence of discriminatory intent.  *Godwin v. Hunt*

*Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).  Direct evidence is defined as "evidence of

conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the *fact finder* to infer that the attitude was more likely than not a motivating factor in the employer's decision." *Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 812 (9th Cir. 2004) (citation omitted) (alteration in original). Hollowell has failed to present direct evidence that the individuals responsible for determining his wage rate held discriminatory attitudes toward Hollowell because of his race.

Alternatively, a plaintiff may establish a *prima facie* case of disparate treatment through circumstantial evidence showing: (1) he belongs to a protected class; (2) he was qualified for a job or was performing according to his employer's legitimate expectations; (3) he was subject to an adverse employment action; and (4) similarly situated Caucasians were treated more favorably. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). Where the plaintiff is able to establish a *prima facie* case of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Davis*, 520 F.3d at 1089. If the employer satisfies this burden, the plaintiff must demonstrate that the "reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " *Davis*, 520 F.3d at 1089 (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123-24 (9th Cir. 2000)); *see also McDonnell Douglas*, 411 U.S. at 804.

Kaiser does not dispute that Hollowell, an African Amercan, is a member of a protected class or that he was qualified, and performing adequately, as a housekeeping aide. Kaiser does argue that Hollowell has failed to present evidence that Hollowell was paid less than his Caucasian counterparts

or that his comparators were similarly situated.

As noted above, Hollowell fails to present any evidence supporting a conclusion that Caucasians were paid more than he. Kaiser has presented evidence that of the thirteen employees assigned to clean the kitchen during the relevant period, seven were housekeeping aides and eight were floor care technicians. Of the seven employees receiving housekeeping aide wages, four were Caucasian, two were African-American and one was Hispanic/Latino, while of the eight employees receiving floor care technician wages, six were Caucasian, one was African-American and one was Hispanic/Latino. Furthermore, of the seven housekeeping aides who currently use the walk-behind floor scrubber but are paid housekeeping aide wages, five are Caucasian and two are African-American. This evidence clearly establishes that the wages paid to Hollowell were consistent with those paid other housekeeping aides without regard to their race and, similarly, that the higher wage paid to floor care technicians was not contingent upon the employee's race. Hollowell has failed to establish that he suffered any adverse employment action.

Hollowell has also failed to present evidence to support a finding that he was treated differently from similarly-situated Caucasian employees. To be used as valid comparators in the prima facie case analysis, other workers who purportedly recieved more favorable treatment must be similarly situated "in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). The court has already determined that the two comparators identified by Hollowell were qualified to strip, wax, and buff floors using the ride-on machine, and performed these jobs on a regular basis. Hollowell concedes he was not trained to engage in these activities, never performed these tasks, and was never asked by Kaisier to do these jobs. Hollowell was not similarly situated to either Sampson or Cutler. Hollowell has failed to present evidence sufficient to support his Section 1981 claim for

disparate treatment based on his wages. Kaiser's motion for summary judgment on Hollowell's Sixth Claim for Relief should be granted.

### B. Reassignment

Hollowell also alleges that Kaiser violated Section 1981 by subjecting him to discriminatory job assignments or reassignments. Kaiser moves against this claim in this partial summary judgment motion regarding Hollowell's pay-related claims based on Hollowell's statement at his deposition that his claim for discriminatory pay and claim for discriminatory job assignments are the same claim and are based on his assignment to the kitchen as a housekeeping aide. (Hollowell Dep. 611:10-24.) Kaiser argues that if Hollowell's discriminatory pay claim under Section 1981 is dismissed, his claim for discriminatory job assignments under Section 1981 should be dismissed as well.

Hollowell alleges in his complaint that his assignment to clean the kitchen was discriminatory and based on his race. (Second Am. Compl. ¶ 54.) He alleges he complained about the assignment, which he described as less desirable and more physically strenuous than his former position, but that Kaiser ignored his request. (Second Am. Compl. ¶ 14.) Hollowell does not offer any evidence in support of these allegations.[8] Hollowell cannot defeat Kaiser's summary judgment motion by

---

[8]Hollowell addresses Kaiser's motion to dismiss the Seventh Claim for Relief in his opposition to Kaiser's motion for summary judgment on Hollowell's remaining claims but does not reference or incorporate those arguments, or provide evidentiary support for such arguments, in his opposition to Kaiser's motion for partial summary judgment on the pay-related claims. The court is not obligated to look through the court record, or Hollowell's pleadings and evidence filed in opposition to an unrelated motion, to determine whether Hollowell has presented a viable argument and supporting evidence against the motion at hand. *Ward v. Bolek*, No. 3:12-cv-00136-SI, 2014 WL 795329, at *7 (D. Or. Feb. 27, 2014)( "Courts have 'no independent duty "to scour the record in search of a genuine issue of triable fact," and may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." ' The Court is 'under no obligation to undertake a cumbersome review of the record on [Ward's] behalf' and summary judgment can be granted on this basis alone.") (quoting *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010)(quoting *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996)).

relying on solely on the unverified allegations of his complaint.  *Hernandez*, 343 at 1112; *Lew v. Kona Hosp*., 754 F.2d 1420, 1423 (9th Cir. 1985)(verified complaint based on personal knowledge setting forth admissible facts may be used to oppose summary judgment motion).

Kaiser has presented evidence that in early 2010, Hollowell was assigned to clean the kitchen and that in July 2010, Sullivan granted Hollowell's request that the kitchen be his regular assignment as a housekeeping aide.  In 2011, Hollowell requested, and was granted, a reassignment to a bed-making position.  Within thirty days, Hollowell was allowed, at his request, to return to the kitchen. Hollowell has never requested reassignment to a floor care technician position.  This evidence establishes that Hollowell was assigned to the jobs he requested.  Hollowell can not request an assignment or reassignment and then argue that Kaiser's granting of such request constitutes an adverse employment action.  To the extent Hollowell relies on Kaiser's failure to assign him to a floor care technician position, he has failed to present evidence that he applied, or was technically qualified, for the position.  Hollowell has failed to adequately support his claim for disparate treatment based on his job assignments under Section 1981.

*Conclusion*

Kaiser's motion (#50) for partial summary judgment on Hollowell's Fifth, Sixth, and Seventh Claims for Relief under the Act and Section 1981 should be GRANTED.  Hollowell's motion (#64) for partial summary judgment on his Fifth Claim for Relief alleging violation of the Act should be DENIED.  Kaiser's objections to Hollowell's evidentiary submissions are overruled with regard to Sampson's declaration and sustained in all other respects.

Scheduling Order

The Findings and Recommendation will be referred to a district judge for review.

Objections, if any, are due **August 12, 2014**.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 28th day of July, 2014.


_____
        /s/ John V. Acosta
        JOHN V. ACOSTA
United States Magistrate Judge